IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MCPEAK

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TIMOTHY L. MCPEAK, APPELLANT.

Filed November 5, 2019.    No. A-19-182.

Appeal from the District Court for Lancaster County: LORI A. MARET, Judge. Affirmed.

Joe Nigro, Lancaster County Public Defender, and Kristi J. Egger for appellant.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

WELCH, Judge.

## I. INTRODUCTION

Timothy L. McPeak pled no contest to strangulation and was sentenced to 3 years' imprisonment followed by 18 months' postrelease supervision. After his notice of appeal was filed 1 day out of time, McPeak sought, and was granted, postconviction relief in the form of new direct appeal. McPeak now appeals his plea-based conviction of strangulation, contending that the sentence imposed was excessive and that his trial counsel was ineffective. For the reasons set forth herein, we affirm.

## II. STATEMENT OF FACTS

The State originally charged McPeak with strangulation causing serious bodily injury, a Class IIA felony. Pursuant to a plea agreement, McPeak pled no contest to an amended charge of strangulation without causing serious bodily injury, a Class IIIA felony. As part of the plea agreement, the State agreed to dismiss charges for possession of a controlled substance

(methamphetamine). The State provided a factual basis which established that on January 25, 2018, McPeak strangled the victim to the point of unconsciousness after the parties argued and a physical altercation ensued. McPeak admitted to officers that he strangled the victim using two hands on the victim's throat. When officers responded to the scene, the victim was unresponsive and experiencing seizures. (The victim had a preexisting head injury which caused him to have seizures.) The victim was transported to the hospital, and 5 hours after the incident, the victim remained in critical condition. Officers were able to interview the victim the following day and the victim stated that McPeak attacked, punched, and choked him. Officers observed swelling, red marks, and abrasions to the victim's neck.

At the sentencing hearing, the district court stated:

> I do take into consideration, Mr. McPeak, the serious nature of this offense, and that primarily is the problem that the Court struggles with when trying to decide what kind of a sentence to impose.
>
> I believe [the prosecutor] is accurate when he states that this could have been a very different case for you if the victim had not survived, and you received the benefit of a generous plea offer in this case.
>
> I don't know what it's going to take in order to protect the community from the point at which you snap for whatever reason. And you already, it's my understanding through the [presentence investigation report], were being supervised at one of the highest levels in the community, and yet still you used narcotics, which is your own choice, which exacerbates your mental illness. And for that you also have to accept responsibility.
>
> Having regard for the nature and circumstances of this crime, the history, character, and condition of the defendant, the Court finds that imprisonment of the defendant is necessary for the protection of the public because the risk is substantial that, during any period of probation, the defendant would engage in additional criminal conduct and because a lesser sentence would depreciate the seriousness of the defendant's crime and promote disrespect for the law.

The court sentenced McPeak to 3 years' imprisonment followed by 18 months' postrelease supervision. McPeak was given credit for 152 days served.

## III. ASSIGNMENTS OF ERROR

On appeal, McPeak contends that the sentence imposed was excessive. He also contends that his trial counsel was ineffective in (1) failing to timely file his notice of appeal, (2) failing to bring relevant information to the sentencing court's attention and/or failing to include pertinent information in the presentence investigation report, and (3) in failing to object to inadmissible hearsay evidence presented by the State at the sentencing hearing.

## IV. STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015); *State v. Cheloha*, 25 Neb. App. 403, 907 N.W.2d 317 (2018). Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether

a sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

Appellate review of a claim of ineffective assistance of counsel is a mixed question of law and fact. *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019). When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. *Id*. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), an appellate court reviews such legal determinations independently of the lower court's decision. *State v. Chairez, supra*.

In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id*.

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE

McPeak first contends that the sentence imposed was excessive. McPeak was convicted of strangulation, a Class IIIA felony. See Neb. Rev. Stat. § 28-310.01(2) (Reissue 2016). Although § 28-310.01 was amended in 2019, that amendment is not applicable to the instant case. Class IIIA felonies are punishable by 0 to 3 years' imprisonment and 9 to 18 months' postrelease supervision if imprisonment is imposed, and/or a $10,000 fine. See Neb. Rev. Stat. § 28-105 (Reissue 2016). McPeak's sentence of 3 years' imprisonment followed by 18 months' postrelease supervision is within the statutory sentencing range. We further note that the sentencing court determined that McPeak was not an appropriate candidate for probation because imprisonment of McPeak was necessary for the protection of the public because the risk was substantial that, during any period of probation, McPeak would engage in additional criminal conduct and because a lesser sentence would depreciate the seriousness of McPeak's crime and promote disrespect for the law.

At the time of the preparation of the presentence investigation report (PSR), McPeak was 50 years old, single, with no dependents. He had earned a diploma through the GED program but, because of chronic severe and persistent mental illness (chronic paranoid schizophrenia), he was unemployed and received $850 per month in Social Security disability income. McPeak reported problems with his use of alcohol, marijuana, and methamphetamine, and reported being an IV drug user. He also reported briefly using mushrooms, acid, cocaine, and reported using heroin "on an experimental basis." McPeak's criminal history includes two convictions each for disturbing the peace, trespassing and assault, and one conviction each for negligent smoking, theft of services, injuring or destroying the property of another, and possession of marijuana. The level of service/case management inventory assessed McPeak as a very high risk to reoffend.

Based upon factors including that the sentence imposed was within the statutory sentencing range, the benefit McPeak received from the plea agreement, his criminal history, the seriousness of the offense, and his assessment as a very high risk to reoffend, we find no abuse of discretion in the sentence imposed by the district court.

## 2. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, McPeak contends his trial counsel was ineffective in (a) failing to timely file his notice of appeal, (b) failing to bring relevant information to the sentencing court's attention and/or failing to include pertinent information in the PSR, and (c) in failing to object to inadmissible hearsay evidence presented by the State at the sentencing hearing.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record, in order to preserve such claim. *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019). The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved: On direct appeal, the resolution of ineffective assistance of counsel claims turns upon the sufficiency of the record. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). The determining factor is whether the record is sufficient to adequately review the question. *Id*.

Further, an appellate court can determine whether the record proves or rebuts the merits of a claim of ineffective assistance of trial counsel only if it has knowledge of the specific conduct alleged to constitute deficient performance. *Id*. An ineffective assistance of counsel claim is raised on direct appeal when allegations of deficient performance are made with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id*. A claim insufficiently stated is no different than a claim not stated at all. *Id*.

### (a) Failure to Timely File Notice of Appeal

McPeak first claims that his trial counsel was ineffective by failing to timely file his notice of appeal. However, McPeak already litigated this claim and received relief in the form of this new direct appeal. See *State v. Jim*, 275 Neb. 481, 747 N.W.2d 410 (2008) (stating where defendant is denied right to appeal because counsel fails to perfect direct appeal, proper vehicle for defendant to seek relief is through Nebraska Postconviction Act and proper relief is new direct appeal).

Although McPeak concedes that he was granted his right to appeal pursuant to his motion for postconviction relief, he also contends that he

> has been prejudiced by trial counsel's failure to file [the direct appeal] in a timely fashion. [McPeak] was forced to serve time in the Nebraska Department of Corrections for a longer period of time than if the appeal had been timely filed and timely decided. The sentence could have been reduced or a term of probation imposed already, as it is [McPeak]'s position that the current sentence was excessive.

Brief for appellant at 18-19.

McPeak has cited to no authority, and our independent research has not uncovered any Nebraska authority, to support the proposition that McPeak would be entitled to any additional relief for his claim other than the new direct appeal which he has already received.

(b) Failure to Bring Relevant Information
to Attention of District Court

McPeak next contends that his trial counsel was ineffective in failing to bring relevant information to the sentencing court's attention and/or failing to include pertinent information in the PSR.

First, we note that within this assignment of error, McPeak specifically argues that his trial counsel failed to investigate the victim's criminal history prior to his plea resulting in McPeak "feeling he had no choice but to plead guilty, because trial counsel failed to investigate potential mitigating factors and a possible legal defense for [him]." Brief for appellant at 19. But McPeak has not separately assigned this argument as error. As the Nebraska Supreme Court recently held in *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019), "assignments of error on direct appeal regarding ineffective assistance of trial counsel must specifically allege deficient performance, and an appellate court will not scour the remainder of the brief in search of such specificity." See, also, *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016) (for alleged error to be considered by appellate court, appellant must both assign and specifically argue alleged error).

Second, McPeak contends that, even if he "had still decided to go forward with his plea to the lesser strangulation charge, it [was] certainly important for the sentencing court to take such information into consideration and impose a lesser sentence or a sentence involving probation." Brief for appellant at 20. McPeak makes this assignment in reference to his counsel failing to include information about the victim's criminal past in the PSR or bring it to the court's attention during sentencing. However, within the PSR, McPeak provided his own statement that the victim started yelling at him and insulting him and that a physical confrontation ensued. The PSR also included several statements by McPeak that he believed that the victim was a criminal, a "terroristic criminal," and had "a list of fucking crimes." The district court reviewed the PSR, was aware of McPeak's motivation for committing the offense and his statement that the victim was a criminal, and was able to take that information into account in determining McPeak's sentence which we have already found not to be an abuse of discretion. Accordingly, McPeak's claim of ineffective assistance of counsel on the basis that his counsel did not provide the sentencing court with information regarding the victim's criminal history fails.

(c) Failure to Object to Inadmissible Hearsay
Evidence at Sentencing Hearing

McPeak's third claim regarding the ineffective assistance of his trial counsel is that counsel was ineffective in failing to object to inadmissible hearsay evidence presented by the State at the sentencing hearing. Specifically, McPeak objects to the prosecutor "submit[ing] to the court, for consideration, the victim's version of events, basically testifying for [the victim]." Brief for appellant at 20.

The Nebraska Supreme Court recently stated in *State v. Jenkins*, 303 Neb. 676, 721, 931 N.W.2d 851, 885 (2019):

> We have recognized that strict rules of evidence do not apply at the sentencing phase. The sentencing phase is separate and apart from the trial phase, and the traditional rules of evidence may be relaxed following conviction so that the sentencing authority can receive all information pertinent to the imposition of sentence. A sentencing court has

- 5 -

broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed, and evidence may be presented as to any matter that the court deems relevant to the sentence.

See Neb. Rev. Stat. § 27-1101(4)(b) (Reissue 2016).

Because the rules of evidence do not apply to sentencing hearings and because McPeak makes no claim that the alleged hearsay evidence violated his due process rights, McPeak's claim that his trial counsel was ineffective in failing to object to inadmissible hearsay evidence presented by the State at the sentencing hearing necessarily fails.

## VI. CONCLUSION

Having considered and rejected McPeak's assigned errors, we affirm his conviction and sentence.

AFFIRMED.